**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Wesley Anthony, being duly sworn, depose and state:

**AGENT BACKGROUND**

1. I am a Special Agent of the U.S. Small Business Administration – Office of Inspector General. I am empowered by the Inspector General Act of 1978 to conduct investigations, carry firearms, execute and serve search, seizure, and arrest warrants, make warrantless arrests, administer oaths, require and receive information relating to offenses against the United States, and take other such actions as authorized by law. I was previously a Special Agent with the Department of Homeland Security, Homeland Security Investigations. As a Special Agent with 17 years of experience, I have conducted or been involved in human smuggling and human trafficking investigations, including the illegal practice of harboring and employing unlawfully present foreign nationals for the purpose of using them as laborers in order to obtain a commercial advantage. In my career, I have also conducted numerous investigations relating to financial fraud, money laundering, immigration fraud, and cybercrime investigations. I have received training at the Federal Law Enforcement Training Center in Georgia regarding financial fraud and cybercrime. I have attended specialized training courses in the areas of financial crime and money laundering during my career. In furtherance of human smuggling/human trafficking, financial crime, and cybercrime investigations I have conducted, I have employed both traditional and contemporary investigative techniques to include physical surveillance, document review, witness interviews; record checks, and the seizure and analysis of electronic media and data. I have also either led or participated in the execution of numerous enforcement actions, including probable cause arrests and searches, many of which involved the subsequent seizure of both tangible items of evidentiary value and electronic media and data, as well as the identification of material witnesses.

## INTRODUCTION

2. Below, I have set forth only those facts necessary to establish probable cause that Zheng Kong Zheng, Kong Mei Zheng, Zheng Guo Zheng, and De Yun Wang (spouse of Zheng Kong Zheng) have violated 18 U.S.C. § 1349 (wire fraud conspiracy) between April 2020 and June 2021 in the Southern District of Alabama.[1] I am familiar with the information contained in this affidavit based upon the investigation I conducted and based on my conversations with other law enforcement officers. Because this affidavit is being submitted for the limited purpose of securing arrest warrants for the above-named persons for the alleged violation committed in this district, I did not include each fact known to me concerning this investigation. All times, dates, amounts, and locations described in my affidavit are approximations. The proffered facts are allegations only.

## PROBABLE CAUSE

**A. Background regarding restaurant**

3. In May 2009, the U.S. Border Patrol office in Mobile, Alabama received information that Zheng Kong Zheng, the owner of the real property located at 3725 Airport Boulevard, Suite 203, Mobile, Alabama 36608 ("the Restaurant"), was employing and harboring undocumented non citizens who were illegally present in the United States. The real property located at 505 Newport Drive West, Mobile, Alabama 36609 ("the Newport House") was being used to harbor the undoc-umented non citizens. In October 2009, China Super Buffet, Inc. was incorporated in Alabama with an address of 3725 Airport Blvd in Mobile. Kong Mei Zheng was listed as the company's president.

---

[1] The elements of 18 U.S.C. § 1349 are: (1) two or more people agreed to try to accomplish a common and unlawful plan to commit wire fraud, and (2) the defendant knew about the plan's unlawful purpose and voluntarily joined in it.

4. In 2014, agents investigated the China Super Buffet. Zheng Kong Zheng and his sister, Kong Mei Zheng, operated the business.

5. At various times from 2014 to the present, agents have surveilled the Restaurant and witnessed unlawful activity. Agents have seen Zheng Kong Zheng, Kong Mei Zheng, and employees of China Super Buffet drive many persons between the Restaurant and two homes, namely the Newport House and the real property located at 3616 San Juan Drive, Mobile, Alabama 36609 ("the San Juan House"). Agents have discovered that several Asian and Hispanic workers are housed in the two homes. Surveillance operations identified a distinct pattern of activity where a 2011 GMC Van, white in color (the "Van") picks up the workers in the morning from each residence and transports them to the Restaurant. The workers would then enter the restaurant directly through the back door. After the workday, the Van would return the workers to the Newport House and the San Juan House.

6. On several occasions, the Van, which is owned and registered by the Restaurant, was stopped by law enforcement in Mobile. On each occasion, the Van's occupants were identified as the Restaurant's employees. Most occupants were either undocumented noncitizens in the United States contrary to law or were purportedly in the process of changing their immigration statuses after initially unlawfully entering the United States or unlawfully overstaying a previously issued non-immigrant visa. These undocumented noncitizens were unauthorized to have lawful employment in the United States. During each traffic stop, the Van was being driven by the Restaurant's employers or supervisors. The passengers worked at the Restaurant and lived in the harboring houses. Despite several traffic stops of the Van and law enforcement intervention, the harboring and illegal employment of undocumented noncitizens continued unabated.

7. Agents have reviewed financial transactions involving the Zhengs and the China Super Buffet business at the Restaurant. The Restaurant is generating profits that have enriched Zheng family members.

**B. Background regarding government-authorized funding programs**

8. As part of the United States' response to the economic downturn caused by the COVID-19 pandemic, the U.S. Small Business Administration ("SBA") was authorized via the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") to make loans to afflicted businesses. Above all, any business seeking to benefit from CARES Act-authorized funding programs cannot be engaged in any illegal activity.

9. The Restaurant applied for funding under several SBA-administered programs, namely, the Economic Injury Disaster Loan ("EIDL") Program, the Payroll Protection Program ("PPP"), and the Restaurant Revitalization Fund ("RRF"). While the programs are designed to assist businesses weather the COVID-19 disaster, the programs are substantially different.

10. For example, EIDLs are working capital loans and have a fixed interest rate and 30-year term, whereas PPP loans are 100% forgivable if 60% or more of the PPP loan proceeds are used to meet existing payroll obligations. The period in which EIDL and PPP applicants must affirm certain business performance measures spanned the 12 months prior to the COVID-19 pandemic, specifically, the 12 months prior to February 1, 2020 (for EIDL applications) and February 15, 2010 (for PPP applications). Within the loan applications for each program, the business's gross revenues, cost of goods sold (cost of doing business), number of employees, payroll expenses, and other facts were listed which were then used by the SBA in the loan application evaluation process.

11. The American Rescue Plan Act, which became public law on March 11, 2021, established the RRF to support the restaurant industry in the United States by providing funding to those that

have suffered significant pandemic-related revenue loss. This program provides restaurants with funding equal to their pandemic-related revenue loss up to $10 million per business and no more than $5 million per physical location. Recipients are not required to repay the funding if funds are used for eligible uses no later than March 11, 2023.

### C. The Restaurant's EIDL applications

12. On April 4, 2020 and June 15, 2020, the Restaurant submitted EIDL applications x3668 and x6667 in which the Restaurant made several assertions:

   i. The Restaurant said it operated under the trade name of "Zheng China Super Buffet, Inc."

   ii. The Restaurant indicated it employed seven people and realized gross revenues of $804,688 in the 12 months prior to January 31, 2020.

   iii. The Restaurant realized costs of goods sold of $362,110 in the 12 months prior to January 31, 2020.

   iv. Zheng Guo Zheng is the Chief Executive Officer with a 100% ownership stake in the Restaurant.

   v. The contact address for Zheng Guo Zheng was the San Juan House.

   vi. The Restaurant's applications were prepared by a person located in New York, New York.

13. The intended destination account for disbursed EIDL funding was a Regions Bank account x8149. (On September 9, 2020, the status of the loan applications was changed to "Not Interested" after the applicant declined the offer of an EIDL or neglected to respond to SBA correspondence regarding the underlying loan application.)

### D. The Restaurant's PPP application

14. On June 5, 2020, the Restaurant, through Zheng Guo Zheng, applied for funding under the PPP through Regions Bank. Zheng Guo Zheng provided copies of 2019 W-2s and 2020 payroll reports to support his loan application.

15. On June 23, 2020, the Restaurant received $9,100 in SBA-guaranteed loan proceeds stemming from its PPP application. The loan proceeds were disbursed by Regions Bank to the Restaurant's Regions Bank account x7056.

16. Investigation of the disposition of the PPP loan proceeds received by the Restaurant found that they were not used to meet any payroll obligations or retain employees of the Restaurant. On the contrary, financial records show that the PPP funds were used to pay utilities and insurance for the Restaurant, Newport House, and San Juan House - all in furtherance of the Restaurant's illegal activities - which in turn enriched Zheng Guo Zheng, the owner of the Restaurant; Kong Mei Zheng, the owner of the San Juan House used to harbor illegal workers; and De Yun Wang and Zheng Kong Zheng, the owners of the Newport House used to harbor illegal workers, all in violation of the borrower's certification within the PPP application which states in part, "The Applicant is not engaged in any activity that is illegal under federal, state or local law." and "…the funds will be used to retain workers and maintain payroll."

17. In the PPP application, Zheng Guo Zheng affirmed the truthfulness of its information. The Restaurant's PPP application x2159 made several material assertions:

      vii.    The Restaurant, in the application styled as "Zheng China Super Buffet, Incorporated," operated under an employer identification number, employed six persons, and was established on August 30, 2019.[2]

      viii.    Zheng Guo Zheng is the principal owner of the entity with a 100% ownership stake in the business. Zheng Guo Zheng resides at the San Juan House.

      ix.    The Restaurant incurred monthly payroll expenses of $3,675.

18. The PPP application supporting documents contain what purport to be W-2 forms for persons employed by the Restaurant. The W-2s submitted in support of the PPP application identified certain persons as employees. Notably absent from the PPP application was any information listing identified Hispanic workers, who I know are unlawfully employed by the Restaurant and harbored by the business principals. This material omission served to conceal the business's ongoing violations regarding its harboring and employment of unlawfully present noncitizens. This concealment made the business summarily ineligible for PPP funding under the provisions of the program.

19. A background check for consumer, credit bureau, utility, and other reporting documents regarding the Restaurant's employees revealed that the listed employees did not reside at the addresses used on the 2019 W-2s. (As previously stated, the San Juan House and the Newport House are used to harbor noncitizens who work at the Restaurant.)

20. The Restaurant's Regions Bank records for account x8149 were reviewed to compare to payroll information provided for the PPP loan. This review only identified four payroll checks issued in 2019 and one payroll check issued in 2020.

---

[2] This "Business Established" date contradicts the October 1, 2019 date stated in the referenced EIDL applications.

21. The Restaurant's Regions Bank account x6495 show suspicious business practices. While the Restaurant changed ownership in August 2019, subsequent payroll checks continued to be drafted on Asia Super Buffet Inc.'s account. However, the Restaurant's payments did not match the records in the Restaurant's W-2 forms provided to Regions Bank in support of the underlying PPP loan application.

22. De Yun Wang, Kong Mei Zheng, Zheng Guo Zheng, and Zheng Kong Zheng never worked for the Restaurant in Mobile, Alabama in 2019 and 2020 and were ineligible to receive payroll checks. They departed the greater Mobile area in 2018 and established residency and businesses outside of the Southern District of Alabama. All 2019 W-2s contain inaccurate addresses. Kong Mei Zheng (sister of Zheng Guo Zheng) as well as a sister-in-law of the Zheng siblings received payroll checks from the Asia Super Buffet Inc. but were not listed in the Restaurant's 2019 payroll reports.

**E. The Restaurant's RRF application**

23. As with other government-funded economic stimulus, the RRF requires (among other provisions within the program) that the applicant / recipient affirm that it is not engaged in any activity that is illegal under federal, state, or local law. The Restaurant was not eligible to receive RRF funds due to the Zheng family's harboring of undocumented noncitizens and their unlawful employment at the Restaurant. The Restaurant applied for RRF funding knowing that the business was engaged in immigration fraud.

24. According to SBA records, on May 21, 2021 the Restaurant applied to the SBA to obtain RRF funding. Based on the financial and workforce assertions within RRF application x2727 for Zheng China Super Buffet Inc., the SBA created RRF Grant x90-02 for $412,656. Within the RRF application, the Restaurant asserted that it was 100% owned by Zheng Guo Zheng, that he was a

U.S. citizen, and that he resided in the San Juan House. Further, the application asserted that the Restaurant realized gross revenues of $201,174 in 2019 (i.e., prior to the Covid-19 pandemic) and gross revenues of $359,389 in 2020.

25. On May 28, 2021, Zheng China Super Buffet Inc. received $412,656 in SBA funds that were deposited into the company's Regions Bank account x8149.

## CONCLUSION

26. I believe there is probable cause that Zheng Kong Zheng, Kong Mei Zheng, Zheng Guo Zheng, and De Yun Wang have violated 18 U.S.C. § 1349 between April 2020 and June 2021 in the Southern District of Alabama.

27. The Restaurant and its principals sought to defraud the SBA by applying for SBA funds appropriated or authorized under The CARES Act. Historical surveillance of the Restaurant, the San Juan House, and the Newport House have found that the labor staff of the Restaurant reside at the San Juan House and the Newport House. Most of these workers are of Hispanic descent and in the United States unlawfully. The Restaurant's nominee employees, as asserted on SBA loan applications, are almost entirely Zheng family members and they are not legitimate employees. Within its SBA loan applications, the Restaurant made materially false statements at various times about certain aspects of the business. These materially false statements, which were relied upon by the SBA and participating PPP lender, were part of the Restaurant's scheme to unlawfully influence and manipulate the SBA and its participating lender. As an employer of unlawfully present foreign nationals, the Restaurant is summarily ineligible to receive SBA funded or SBA-guaranteed loan proceeds that are intended to assist lawfully operated business entities negatively affected

by the economic decline caused by the COVID-19 pandemic. Further, the Restaurant and its principals caused interstate wire communications, namely, two EIDL applications, one PPP application, and one RRF application.

Dated June 24, 2021.

Respectfully submitted,

Wesley Anthony
Special Agent
U.S. Small Business Administration
Office of Inspector General

THE ABOVE AGENT HAS ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS 24th
DAY OF JUNE 2021.

UNITED STATES MAGISTRATE JUDGE